**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BANKS MORRISON INNOVATIONS, LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:25-cv-422 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| GENERAL MOTORS LLC AND | § | |
| BEAUMONT MOTOR COMPANY, | § | |
| Defendants. | § | |
| | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement in which Banks Morrison Innovations, LLC ("Plaintiff" or "BMI") makes the following allegations against Defendant General Motors LLC ("GM LLC"), and Defendant Beaumont Motor Company ("BMC") (collectively, "Defendants"), each of whom is a manufacturer and/or distributor who, without authority, imports, makes, uses, offers for sale and/or sells in the United States motor vehicles and components thereof that infringe one or more claims of the Asserted Patents (as defined below) in this matter:

**INTRODUCTION**

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., involving infringement of the patents in suit identified by United States Patent No. 11,161,555 (the "'555 Patent", **Exhibit A**), United States Patent No. 11,702,148 (the "'148 Patent", **Exhibit B**), and United States Patent No. 122,240,533 (the "'533 Patent", **Exhibit C**) (collectively, the "Asserted Patents").

## PARTIES

2.     Plaintiff Banks Morrison Innovations, LLC ("Plaintiff" or "BMI") is a North Carolina limited liability company with its principal place of business in Archer Lodge, North Carolina. BMI designs and sells automotive parts associated with GM automobiles. BMI sells its products throughout the United States including in the State of Texas and the Eastern District of Texas. BMI is the owner of all rights, title, and interest in and to the Asserted Patents.

2.     Upon information and belief, Defendant GM LLC is a limited liability company organized and existing under the laws of Delaware with a principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265. GM LLC may be served through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. On information and belief, GM LLC is registered to do business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas since at least January 14, 2010. On information and belief, GM LLC is a wholly owned subsidiary of General Motors Company and has engaged in, and continues to engage in, activities including using, making, having made, marketing, distributing, offering for sale, selling, having sold, importing, and having others use, make, market, distribute, offer for sale, sell, or import automotive vehicles and components from GM-managed brands (e.g., GMC and Chevrolet) in the United States. On information and belief, GM LLC has also induced and contributed to the infringement of others through such activities.

3.     Upon information and belief, GM LLC conducts substantial and ongoing business operations across the State of Texas. On information and belief, GM LLC has a regular and established place of business in the Eastern District of Texas at 301 Freedom Drive, Roanoke, Texas, Denton County, 76262 and maintains a significant physical presence through thousands

of employees located at various facilities, including but not limited to, e.g., the Arlington Assembly plant in Arlington having a 5.75 million square foot facility that produces full-size SUVs such as the Chevrolet Tahoe, Chevrolet Suburban, GMC Yukon, and Cadillac Escalade; the Fort Worth Parts Distribution Center in Roanoke having a 404,000 square foot facility in Denton County; the GM Financial Arlington Operations Service Center in Arlington; the GM Financial Headquarters in Fort Worth; the GM Financial San Antonio Customer Service Center in San Antonio; the GM Austin Customer Engagement Center in Austin; Austin IT Innovation Center in Austin; and South Central Regional Office in Irving.

4.      Upon information and belief, GM LLC designs, manufactures, uses, distributes, imports, offers for sale, and/or sells, in the State of Texas and the Eastern District of Texas, automotive vehicles and components thereof that infringe one or more claims of the Asserted Patents, including by offering for sale, selling, and installing infringing products through its dealerships and service networks, and has also induced and/or contributed to the infringement of others in the State of Texas and the Eastern District of Texas including by promoting, instructing, recommending, or supplying of such infringing products or providing installation services or instructions related to the infringing products. See Fig. 1.

**Figure 1**



5.     Upon information and belief, Defendant BMC is a domestic for-profit corporation organized and existing under the laws of Texas. On information and belief, BMC does business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas. On information and belief, BMC owns and operates Classic Buick GMC of Beaumont and Classic Chevrolet Cadillac of Beaumont (collectively, the "Classic GM Dealerships of Beaumont"), each an authorized GM LLC dealership located in Beaumont, Texas and the Eastern District of Texas. On information and belief, BMC through each of the Classic GM Dealerships of Beaumont is an authorized dealership of GM-branded automotive vehicles and components and has engaged in, and continues to engage in, activities including using,

marketing, distributing, offering for sale, selling, having sold, and installing infringing automotive products and components in the United States. On information and belief, BMC has also induced and contributed to the infringement of others through such activities, including by promoting, instructing, recommending, or supplying of such infringing products or providing installation services or instructions related to the infringing products.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

18.    This Court has personal jurisdiction over GM LLC because it conducts business in and has committed acts of patent infringement, contributed to infringement by others, and/or induced others to commit acts of patent infringement in the State of Texas, the Eastern District of Texas, and elsewhere in the United States and have established minimum contacts with this forum state such that the exercise of jurisdiction over GM LLC would not offend the traditional notions of fair play and substantial justice.

19.    Upon information and belief, GM LLC transacts substantial business and continuous business with entities and individuals in the State of Texas and the Eastern District of Texas, by among other things, importing, offering to sell, distributing, selling, and servicing infringing vehicles and components, including those accused of infringing the Asserted Patents. GM LLC purposefully directs these infringing products into the State of Texas and the Eastern District of Texas through an established, ratified, and controlled network of authorized dealerships and distribution channels. GM LLC places the accused vehicles and components

into the stream of commerce with the knowledge and intent that they will be offered for sale, sold, and serviced in the State of Texas—and specifically within the Eastern District of Texas— exclusively through its authorized and controlled dealership network, and does not authorize the sale or servicing of the accused products in this District outside of these channels.

20.    GM LLC is subject to personal jurisdiction of this Court under both general and specific jurisdiction principles, pursuant to the Due Process Clause and/or the Texas Long Arm Statute, because it has engaged in substantial, continuous, and systemic business activities within the State of Texas and the Eastern District of Texas. These activities include, but are not limited to, importing, offering for sale, selling, distributing, installing, and servicing infringing automotive vehicles and components through its authorized, established, and ratified dealership and distribution network located within this District. GM LLC has purposefully availed itself of the privileges of conducting business in Texas, including by soliciting sales, delivering infringing products into the stream of commerce with the intent and expectation that they will be sold and serviced in this District, and by deriving substantial revenue from such conduct. GM LLC's contacts with this forum are such that it should reasonably anticipate being haled into court here in connection with the acts of infringement and other conduct alleged in this action.

21.    Upon information and belief, BMC is a domestic for-profit corporation organized and existing under the laws of Texas, with its principal place of business located in Beaumont, Texas, within the Eastern District of Texas. BMC owns and operates the Classic GM Dealerships of Beaumont, each of which serves as a fixed, physical location through which BMC conducts substantial, continuous, and targeted business activities in the State of Texas and in this District. These activities include, but are not limited to, the marketing, offering for sale, sale, installation, and servicing of automotive vehicles and components—including those

6

alleged to infringe the Asserted Patents—under the authority, control, and ratification of GM LLC. BMC has purposefully availed itself of the privilege of conducting business in this District, derives substantial revenue from its operations here, and its contacts with the forum are such that it should reasonably anticipate being haled into court in connection with the claims in this action.

22.     Upon information and belief, BMC conducts business and has committed acts of patent infringement in this district by offering to sell and/or selling automotive components— including those accused of infringing the Asserted Patents—through online platforms such as the Accessories GMC Website and the Accessories Chevrolet Website. These platforms allow customers to purchase such components with the option of shipping the products to participating GMC or Chevrolet dealers for installation. For customers located within ZIP code 77619, which lies within the Eastern District of Texas, BMC is identified as the sole participating GMC and Chevrolet dealer for purposes of product delivery and installation. Through this conduct, BMC has purposefully directed infringing products into this forum and has engaged in infringing acts within this District, thereby establishing that it is subject to jurisdiction and venue in this District. See Figs. 2-1, 2-2.

**Figure 2-1[1]**



---

[1] https://accessories.gmc.com/product/multipro%E2%84%A2-multi-flex-protective-hitch-cap-by-curt%E2%84%A2-%E2%80%93-associated-accessories-19435134?body=Extended%20Cab%20Pickup&bodyId=18&bodyNumDoors=5&bodyNumDoorsId=5&make=GMC&makeId=48&model=Sierra%201500&modelId=548&wheel=Standard%20Box&wheelId=651&year=2023&bac=116642

**Figure 2-2**



23.     BMC is subject to personal jurisdiction in this Court under both general and specific jurisdiction principles pursuant to the Due Process Clause and the Texas Long-Arm Statute. BMC is a Texas corporation with its principal place of business in Beaumont, Texas, which is located in the Eastern District of Texas. As such, BMC is at home in this District and subject to general jurisdiction. BMC is also subject to specific jurisdiction because, upon information and belief, it has purposefully directed its activities to this District by operating authorized GM LLC dealerships—the Classic GM Dealerships of Beaumont—in Beaumont, where it has marketed, offered for sale, sold, installed, and serviced GM-branded automotive vehicles and components, including those alleged to infringe the Asserted Patents. BMC derives substantial revenue from its business in this District and has engaged in acts of infringement in this forum, such that it should reasonably anticipate being haled into court here in connection with the claims in this action.

24.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) in that the acts of patent infringement complained of herein have occurred and are occurring within the Eastern District of Texas, and Defendants maintain numerous regular and established places of business in this District.

## FACTUAL BACKGROUND

**A.     GM LLC Multifunctional Tailgate's Design Flaw and BMI's Invention of the Solution.**

25.     James E. Banks, Jr. ("Banks") and Michael A. Morrison ("Morrison") (collectively, the "Inventors") are the founders of BMI and inventors of the Asserted Patents.

26.     In September of 2018, Banks purchased a 2019 GMC Sierra truck, which is a vehicle manufactured, sold, and distributed by GM LLC. The 2019 GMC Sierra was the first

model vehicle equipped with GM LLC's newly developed technology in the form of the MultiPro Tailgate.

27.    GM LLC introduced a multifunctional tailgate system under two brand names: "MultiPro," launched with the 2019 GMC Sierra 1500, and "Multi-Flex," introduced with the 2021 Chevrolet Silverado 1500 (the MultiPro tailgate and the Multi-Flex tailgate being collectively referred to as the "Multifunctional Tailgate"). Despite the different designations, the MultiPro and Multi-Flex tailgates are identical in structure and functionality. Both tailgate systems feature six distinct configurations that enhance the versatility of the truck bed, including configurations that allow the tailgate to function as a load stop, a full-width step, a stair step, a work surface, or to provide easier access to the truck bed. The multifunction design integrates an inner gate within the primary tailgate, enabling users to selectively reconfigure the tailgate for different purposes, thereby offering enhanced utility beyond that of a traditional single-panel tailgate.

28.    The MultiPro tailgate was first introduced on the 2019 GMC Sierra 1500 SLT, AT4, and Denali models. In 2020, the MultiPro tailgate was extended to the GMC Sierra 2500HD and 3500HD models. The MultiPro tailgate has remained available on the GMC Sierra models referred to above through the 2021, 2022, 2023, 2024, and 2025 model years. In 2021, Chevrolet introduced the same multifunctional tailgate under the "Multi-Flex" designation on the Silverado 1500 across all trim levels. In 2022, GM LLC expanded the Multi-Flex tailgate to the Chevrolet Silverado 2500HD and 3500HD models, and incorporated the MultiPro tailgate into the GMC Hummer EV Pickup. The Multi-Flex tailgate has remained available on the Chevrolet Silverado 1500 through the 2023, 2024, and 2025 model years.

29. The Multifunctional Tailgate was developed by GM LLC as a multi-functional tailgate that acts essentially as two-tailgates in one with a traditional primary tailgate and a smaller inner gate that is hinged within the primary tailgate. *See* Figure 3-1[2].

**Figure 3-1**

  

30. Both the primary tailgate and the inner tailgate can be lowered and closed as a traditional truck tailgate which transforms the traditional tailgate allowing for new functionality and use as a result of the six separate tailgate positions, including but not limited to use as a load stop, stair step, or mobile flat work surface.

31. Despite the increase in functionality, the Multifunctional Tailgate was developed with a serious design flaw. When a standard trailer hitch or other receiver apparatus is attached to the vehicle and the inner gate is lowered while the primary gate is opened, the inner gate would collide with the attached trailer hitch causing serious damage to the Multifunctional Tailgate. *See* Figure 3-2 and 3-3[3].

[2] https://www.chrisauffenberg.com/blog/six-features-of-the-2019-gmc-sierra-multipro-tailgate-system/
[3] https://gmauthority.com/blog/gm/general-motors-technology/gm-convenience-technology/gmc-multipro-tailgate/

**Figure 3-2**



**Figure 3-3**



32.    When GM LLC released the MultiPro Tailgate on the 2019 GMC Sierra, it was clear that they knew of this design flaw, as indicated by the warnings in the manual, but did not invent and/or design a solution at release. *See* Figure 4-1[4].

**Figure 4-1**



**50    Keys, Doors, and Windows**

To open the inner tailgate, press the upper touch pad on the tailgate handle after unlocking all doors. Pull the top of the tailgate to open.

**Caution**

Do not open the inner tailgate with the primary tailgate open if there is a hitch ball or trailer attached. This may damage the tailgate.

To close the inner tailgate with the primary tailgate closed, firmly push or pull it upward until it latches. Pull it back to be sure it is latched securely.

To close the inner tailgate with the primary tailgate open:

- Hold the primary tailgate and firmly close the inner tailgate.
- Raise the inner tailgate so it meets the primary tailgate and close together at the same time.

When using the tailgate step as a load stop, the load must be secured as the load could shift. See *Cargo Tie-Downs* ⇨ *127.*

**Tailgate Step**

⚠ **Warning**

To avoid personal injury, keep hands away from the hinges when operating the tailgate step.

With the primary and inner tailgates open, the tailgate step can be lowered to access the pickup bed.

**Using the Step**

**Caution**

When using the tailgate as a step, the load rating is 170 kg (375 lb), which includes a person and cargo. Overloading the tailgate step can cause damage to the tailgate system.



33.    In June of 2019, Banks, when attempting to open the inner tailgate on his 2019 GMC Sierra with an attached hitch, realized how easily the release of the inner tailgate could damage the tailgate if there was a hitch ball or trailer attached.

34.    Shortly thereafter, Banks partnered with Morrison to design and invent a product that could be used to prevent the inner tailgate from being damaged when a receiver apparatus or hitch is inserted and attached to the 2019 GMC Sierra. Between June of 2019 and September

---

[4] https://cdn.dealereprocess.org/cdn/servicemanuals/gmc/2019-sierra1500.pdf

of 2019, Banks and Morrison determined a solution for this multi-functional tailgate defect through the design and development of the first multi-functional tailgate deactivation system products (the "Tailgate-Fix Products") and organized BMI to focus on the further development, design, sale, and marketing of other multi-functional tailgate products.

35.     The Tailgate-Fix Products include multifunctional tailgate deactivation system products with each product having circuitry to control the supply of power to motorized latches securing the inner tailgate to the primary tailgate. BMI invented multiple tailgate deactivation system products that control, based on certain inputs, the supply of power to the inner tailgate circuitry through circuitry coupled to the inner tailgate circuitry.

36.     BMI filed on September 6, 2019, the '878 Provisional (as defined below), which included embodiments of the multiple tailgate deactivation system products. Based on feedback from customers using a prototype of the first tailgate deactivation system product, BMI invented a second tailgate deactivation system product, which functions and is installed in a similar manner as the first tailgate deactivation system product, but instead of controlling the supply of power to the inner tailgate circuitry associated with the use of a hitch, it relies on a user manually selecting such as via a push button whether the supply of power to the inner tailgate circuitry should be activated or deactivated. Embodiments of this second tailgate deactivation system product were disclosed in the '231 Provisional filed on November 14, 2019.

37.     In October 2019, BMI introduced to market a first Tailgate-Fix Product having the multi-functional tailgate deactivation system that implemented the tailgate deactivation system based on the technology embodied by the Asserted Patents.

38.     Upon the launch of the first Tailgate-Fix product, BMI began marketing and selling the product with labeling marked "Patent Pending" to reflect its pending patent application. Shortly

after the issuance of the '555 Patent on November 2, 2021, BMI updated its product labeling to reflect the '555 Patent. BMI has since further updated its product markings to include the '148 Patent, and the '533 Patent as those patents issued..

**B.          The Asserted Patents.**

39.     As a result of significant efforts to solve the GM LLC design flaw in the Multifunctional Tailgate with the invention of the Tailgate-Fix Products, Banks and Morrison sought protection of the invention under the patent laws of the United States.

*i.       The '555 Patent.*

40.     On September 6, 2019, Banks and Morrison filed United States Patent Provisional Application No. 62/896,878 (the "'878 Provisional"). The '878 Provisional expired on September 6, 2020.

41.     On November 14, 2019, Banks and Morrison filed United States Patent Provisional Application No. 62/935,231 (the "'231 Provisional"). The '231 Provisional expired on November 15, 2020.

42.     On March 12, 2020, prior to the expiration of the '878 Provisional and the '231 Provisional, Banks and Morrison filed United States Patent Application No. 16/816,441 (the "'441 Application") claiming the benefit of the '878 Provisional and the '231 Provisional. The '441 Application was duly examined and issued as the '555 Patent, entitled "Tailgate Deactivation System," on November 2, 2021.

43.     BMI is the owner of the '555 Patent and has the full and exclusive right to bring actions and recover past and present damages for the Defendants' infringement of the '555 Patent.

44.     The '555 Patent is valid and enforceable. A true and correct copy of the '555 Patent is attached hereto as **Exhibit A**.

45.     The '555 Patent includes 19 claims. ('555 Patent, Ex. A, at 6:9-9:25.)

46.     The '555 Patent relates to a tailgate deactivation system.

47.     The claimed elements and claimed combinations of the '555 Patent were not well understood, routine, and conventional to a person of ordinary skill in the art at the time of the invention.

*ii.     The '148 Patent.*

48.     On October 29, 2021, Banks and Morrison filed United States Patent Application No. 17/514,831 (the "'831 Application") as a continuation of the '441 Application, which claims the benefit of the '878 Provisional and the '231 Provisional. The '831 Application was duly examined and issued as the '148 Patent, entitled "Tailgate Deactivation System," on July 18, 2023.

49.     BMI is the owner of the '148 Patent and has the full and exclusive right to bring actions and recover past and present damages for the Defendants' infringement of the '148 Patent.

50.     The '148 Patent is valid and enforceable. A true and correct copy of the '148 Patent is attached hereto as **Exhibit B**.

51.     The '148 Patent includes 16 claims. ('148 Patent, Ex. B, at 6:11-8:41.)

52.     The '148 Patent relates to a tailgate deactivation system.

53.     The claimed elements and claimed combinations of the '148 Patent were not well understood, routine, and conventional to a person of ordinary skill in the art at the time of the invention.

*iii.     The '533 Patent.*

54.     On August 27, 2024, Banks and Morrison filed United States Patent Application No. 18/816,813 (the "'813 Application") as a continuation of United States Patent Application No. 18/325,661 (the "'661 Application"), filed May 30, 2023, which is a continuation of the '831

Application, which is a continuation of the '441 Application, which claims the benefit of the '878 Provisional and the '231 Provisional. The '813 Application was duly examined and issued as the '533 Patent, entitled "Tailgate Deactivation System," on March 4, 2025.

55.    BMI is the owner of the '533 Patent and has the full and exclusive right to bring actions and recover past and present damages for the Defendants' infringement of the '533 Patent.

56.    The '533 Patent is valid and enforceable. A true and correct copy of the '533 Patent is attached hereto as **Exhibit C**.

57.    The '533 Patent includes 23 claims. ('533 Patent, Ex. C, at 6:19-12:20.)

58.    The '533 Patent relates to a tailgate deactivation system.

59.    The claimed elements and claimed combinations of the '533 Patent were not well understood, routine, and conventional to a person of ordinary skill in the art at the time of the invention.

**C.    Defendants Inducement, Knowledge and Copying of the BMI Invention to Solve the Multifunctional Tailgate Design Flaw.**

60.    After introducing the first Tailgate-Fix Product to the market, BMI received numerous sales, positive reviews and press for solving the design flaw of the Multifunctional Tailgate in the form of the first Tailgate-Fix Product[5].

61.    As is explained in more detail below, GM LLC was aware of the Accused Patents as of at least November of 2019 and partnered with a third party, Lippert Components, Inc. ("Lippert") and Curt Manufacturing, ("Curt") to copy BMI's products incorporating the Asserted Patents into products manufactured by Lippert/Curt and sold on GM's website.  GM

---

[5] *See*, e.g., https://tailgatefix.com/ ("What Our Customers Have to Say"); https://gmauthority.com/blog/2020/07/company-claims-fix-for-gmc-sierra-multipro-tailgate-with-hitch-attached/.

then incorporated the infringing tailgate fix into its own products released starting in or around September of 2021. BMI has since settled its claims against Lippert and Curt, but GM continues to infringe through the sale of accused vehicles incorporating the infringing tailgate "fix" copied from BMI's patent-practicing products.

62.    Upon information and belief, Lippert Components, Inc ("Lippert") is a manufacturer and supplier of engineered products and customized solutions for the RV, marine, automotive, commercial vehicle, and building products industries. On information and belief, Lippert operates through multiple independent brands that develop and market products across these sectors. On information and belief, Lippert has a commercial relationship with GM LLC, supplying components for use in GM vehicles, including tailgate-related systems.

63.    Upon information and belief, suppliers seeking to become Integrated Business Partners ("IBPs") of GMC or Chevrolet must complete an application process. Once approved, on information and belief, certain accessories offered by these IBPs are featured alongside licensed GM accessories in GMC and Chevrolet accessory brochures and on the official accessory websites—accessories.gmc.com and accessories.chevrolet.com (collectively, the "GM Accessory Websites"). On information and belief, these accessories can be ordered through the websites for shipment to a local GMC or Chevrolet dealership, with the option for installation by the dealership on a compatible GM vehicle. Upon purchase, on information and belief, registered users earn three "My GMC Rewards" or "My Chevrolet Rewards" points per dollar spent, which may be redeemed toward the purchase or lease of an eligible new GM vehicle, certified pre-owned vehicles, certified services, GM accessories, GM Genuine Parts, ACDelco parts, or GM protection plans.[6]

---

[6] *See, e.g., supra,* note 8; https://accessories.gmc.com/; https://accessories.chevrolet.com/;
https://www.gmc.com/support/account/rewards/redeem-points?msockid=06672efd5f1a62f2235b3cd55edd633b;

64.    Upon information and belief, Lippert participates in GM LLC's Integrated Business Partner program, maintaining a direct commercial relationship with both the GMC and Chevrolet divisions. Through this partnership, on information and belief, Lippert supplies components and systems, including tailgate-related products, designed and manufactured to meet GM specifications for installation in GM-branded vehicles. As an Integrated Business Partner, on information and belief, Lippert collaborates with GM on product development, integration, and supply chain coordination. While the exact commencement date of this partnership is not publicly specified, Lippert has been recognized as a major supplier to the transportation equipment industry, producing components for various vehicles, including those manufactured by GM LLC.

65.    Upon information and belief, Lippert is the parent company of Curt Manufacturing, LLC ("Curt"), a wholly owned subsidiary. On information and belief, Curt operates under the Lippert corporate umbrella and specializes in the design, manufacture, and distribution of towing products, including hitches, electrical components, and related accessories for the automotive and recreational vehicle markets. On information and belief, Lippert directs and controls Curt's business activities, including the development, marketing, and sale of products that are relevant to the claims asserted in this complaint.

66.    Upon information and belief, Curt maintains a direct commercial relationship with GM LLC as a participant in GM LLC's Integrated Business Partner Program. Through this program, on information and belief, Curt supplies components to both GMC and Chevrolet vehicle lines and collaborates with GM on product development, design integration, and supply chain coordination. Under the Integrated Business Partner Program, on information and belief,

---

https://www.chevrolet.com/support/account/rewards/redeem-points?msockid=06672efd5f1a62f2235b3cd55edd633b.

Curt's focus is on delivering OEM-grade towing solutions that meet GM's engineering specifications and performance requirements for factory and aftermarket installation in GM-branded vehicles. The specific date when Curt joined the Integrated Business Partner Program is not publicly disclosed, but its participation reflects an ongoing strategic alignment with GM in the area of vehicle accessory systems, including towing and trailering components. However, on information and belief, Curt has shared at least since 2016 and continues to have a business relationship with GMC and Chevrolet through the GM LLC's Integrated Business Partner program.[7]

67.     Upon information and belief, GM LLC offers for sale, sells, and promotes Curt-branded tailgate deactivation products that infringe one or more claims of the Asserted Patents (the "Curt Infringing Products"), including through its official websites and as part of its towing and trailering accessory offerings. These Curt Infringing Products include, but are not limited to, Curt-branded wiring harnesses, electronic modules, and integrated electrical systems that are designed and marketed to automatically deactivate a vehicle's tailgate sensors or opening mechanisms when a trailer is connected.

68.     Upon information and belief, BMC—an authorized GM dealership operating in the Eastern District of Texas—also offers for sale, sells, promotes, and installs the Curt Infringing Products through its commercial operations and in connection with GM LLC's accessory distribution platforms, including the Accessories GMC Website and the Accessories Chevrolet

---

[7] *See,* e.g., https://www.southwestadi.com/wp-content/uploads/2016/06/2014%20-%202015%20GMC%20ARC.pdf; https://gmcaad.com/wp-content/uploads/CAAD-January-2017-News-optimized.pdf; https://www.southwestadi.com/wp-content/uploads/2020/05/GMC-All-in-One-Sell-Sheet-Combination-V7-COMP.pdf; https://www.southwestadi.com/wp-content/uploads/2020/05/Chevrolet-All-in-One-Sell-Sheet-Combination-V7-COMP.pdf; https://www.gmenvolve.com/content/dam/gmenvolve/na/us/english/index/parts-and-service/gm-accessories/02-pdfs/2022%20GMC%20Commercial%20Brochure.pdf; https://www.gmenvolve.com/content/dam/gmenvolve/na/us/english/index/parts-and-service/gm-accessories/02-pdfs/2022%20Chevrolet%20Commercial%20Brochure.pdf.

Website. For customers located within the Eastern District of Texas, including ZIP code 77619, BMC is identified as the sole designated dealer for delivery and installation of these infringing products. The Curt Infringing Products practice each element of one or more claims of the Asserted Patents, either literally or under the doctrine of equivalents, by detecting trailer attachment and automatically initiating a tailgate deactivation sequence as claimed.

69.    Upon information and belief, GM LLC received numerous complaints from its customers about the damage that resulted or could result to the Multifunctional Tailgate's inner gate as a result of the design flaw.

70.    Therefore, to remedy such complaints, upon information and belief, in 2019 GM LLC, with actual knowledge of the BMI commercial products, reached out to Curt, requesting Curt to design a solution to solve the design flaw of the Multifunctional Tailgate , a design flaw that had been already solved by BMI's technology integrated into the Tailgate-Fix Products.

71.    Upon information and belief, the request by GM LLC to design a fix to its Multifunctional Tailgate design flaw was the sole reason why Curt made any efforts to produce a product that solved said flaw.

72.    However, instead of designing its own solution, in November of 2019, shortly after BMI's commercial launch of its Tailgate-Fix Products, one of Lippert's or Curt's Senior Electrical Engineers Praveen Muddasani ("Muddasani"), who upon information and belief, began working directly for GM LLC as an engineering manager on or around March of 2022, purchased one of the Tailgate-Fix Products from BMI. Upon information and belief, Muddasani purchased this Tailgate-Fix Product on November 18, 2019, to study and copy BMI's technology to produce a product that would fix the design flaw at the behest of GM LLC.

73.     On or about January 2, 2020, Curt filed provisional patent application No. 62/956,411, entitled "Tailgate Hitch Sensor", wherein the lead inventor was Muddasani.

74.     In May of 2020, BMI reached out to GM LLC with a proposal associated with the Tailgate-Fix Products to fix GM LLC's tailgate defect, which included a request for GM LLC's endorsement of BMI's Tailgate-Fix Products and inquired about the opportunity to work with GM LLC, such as under GM LLC's Integrated Business Partner program, to better serve customers in need of the Tailgate-Fix Products. However, GM LLC never responded to this proposal.

75.     On or about December 10, 2020, Curt began marketing and selling its own tailgate deactivation product copying the technology embedded in BMI's Tailgate-Fix Products and embodied by the Asserted Patents.

76.     Between November of 2021 and September of 2023, BMI and Lippert engaged in settlement negotiations due to Lippert's infringement of the '555 Patent through the development, design, marketing, and selling of Curt's infringing tailgate deactivation product. BMI and Lippert resolved those claims through a settlement agreement executed on December 29, 2023. The allegations of infringement against GM LLC that are specific to the GM Infringing Products are not covered by the Lippert/Curt license. The Lippert/Curt license is expressly limited in scope to the Curt Infringing Products and does not grant GM LLC any rights, licenses, or protections with respect to the GM Infringing Products. Accordingly, GM LLC remains fully liable for any acts of infringement involving the GM Infringing Products, which fall outside the scope of the Lippert/Curt license agreement..

77.    Upon information and belief, shortly after Curt began marketing and selling its tailgate deactivation product, Curt's tailgate deactivation product became available for purchase on the Accessories GMC Website and was featured in GMC accessories brochures.[8]

78.    Curt's tailgate deactivation products are available for purchase on the Accessories GMC Website and the Accessories Chevrolet Website with options to have such products shipped to a participating GMC or Chevrolet dealer such as BMC, have such dealer install such product on an associated GMC or Chevrolet vehicle, or redeem GMC or Chevrolet rewards points towards the purchase of such product. *See* Figa. 5-1 to 5-4.[9]

**Figure 5-1**

---

[8] https://www.gmenvolve.com/content/dam/gmenvolve/na/us/english/index/parts-and-service/gm-accessories/02-pdfs/2022%20GMC%20Commercial%20Brochure.pdf.

[9] https://accessories.gmc.com/product/multipro%E2%84%A2-multi-flex-protective-hitch-cap-by-curt%E2%84%A2-%E2%80%93-associated-accessories-19435135; https://accessories.gmc.com/product/multipro%E2%84%A2-multi-flex-protective-hitch-cap-by-curt%E2%84%A2-%E2%80%93-associated-accessories-19435134; https://accessories.chevrolet.com/product/multipro%E2%84%A2-multi-flex-protective-hitch-cap-by-curt%E2%84%A2-%E2%80%93-associated-accessories-19435134?d_adgroup=154882789580&d_adsrc=4568612&d_campaign=20595772016&d_keyword=chevrolet%20accessories&d_site=MICROSOFT&d_src=4635447&gclid=00ac1bea07b61766862f7c48355b5207&gclsrc=3p.ds&msclkid=00ac1bea07b61766862f7c48355b5207&ppc=MICROSOFT_7884009633_20595772016_154882789580_297383785653&searchTerm=multi-flex%20protective%20hitch%20cap; https://accessories.chevrolet.com/product/multipro%E2%84%A2-multi-flex-protective-hitch-cap-by-curt%E2%84%A2-%E2%80%93-associated-accessories-19435135?d_adgroup=154882789580&d_adsrc=4568612&d_campaign=20595772016&d_keyword=chevrolet%20accessories&d_site=MICROSOFT&d_src=4635447&gclid=00ac1bea07b61766862f7c48355b5207&gclsrc=3p.ds&msclkid=00ac1bea07b61766862f7c48355b5207&ppc=MICROSOFT_7884009633_20595772016_154882789580_297383785653&searchTerm=multi-flex%20protective%20hitch%20cap.



**Figure 5-2**



**Figure 5-3**



Figure 5-4



79.    GM does not have any patent licensing agreements with BMI.

**D. GM LLC Expansion of the Multifunctional Tailgate and Incorporation of BMI's Patented Technology into the Accused Products.**

80.    Since the incorporation of the MultiPro tailgate into the 2019 GMC Sierra, GM LLC has manufactured, distributed and sold other GMC vehicles with the MultiPro Tailgate such as the: (1) GMC Sierra 1500; (2) GMC Sierra HD; (3) GMC Sierra EV; and (4) GMC Hummer EV Pickup (collectively, "GMC Vehicles").

81.    Furthermore, starting in 2021, GM LLC has incorporated the Multifunctional Tailgate into its brand of Chevrolet ("Chevy") vehicles as the Multi-Flex tailgate including the:

(1) Chevy Silverado 1500; (2) Chevy Silverado HD; and (3) Chevy Silverado EV (collectively, "Chevy Vehicles"

82.     Upon information and belief, as an unsuccessful effort to design around the technology embodied by BMI's Asserted Patents, starting with the 2022 models, GM LLC manufactured, distributed and sold the GMC Vehicles and Chevy Vehicles, with a new functionality that operates to control the circuitry that enables power delivery to the latches securing the inner tailgate to control the release of the inner tailgate based on the pressing of the upper touchpad on the tailgate handle. *See* Fig. 7-1.[10]

**Fig. 7-1**



**MultiPro Inner Tailgate Enable/Disable**

The MultiPro inner tailgate may be equipped with an enable/disable feature to prevent the inner tailgate from being opened when a hitch or other equipment is installed that could damage the inner tailgate.

To disable the inner tailgate from opening: ensure that the remote key is within 1 meter (3 ft) of the rear bumper and then hold the upper touchpad on the tailgate handle for up to seven seconds. The tail lamps will flash to alert you that the inner gate has been disabled. The inner and outer tailgate can still be operated like a traditional tailgate, but the inner gate will not be able to be opened alone.

---

[10] 2025 GMC Sierra 1500 User Manual, available at https://www.gmc.com/support/vehicle/manuals-guides?msockid=06672efd5f1a62f2235b3cd55edd633b&compIndex=1&year=2025&make=GMC&model=Sierra%2FSierra+Denali.

83.    Upon information and belief, this technology incorporated into the MultiPro Tailgate and Multi-Flex Tailgate utilizes the same patented technology and/or processes in the Asserted Patents to disable the inner tailgate latches that secure the inner tailgate from releasing by cutting off the supply of power to the inner tailgate when the inner tailgate release has been disabled .

84.    Collectively, all GM LLC's vehicles manufactured, distributed and sold with the Multifunctional Tailgate and incorporating BMI's patented technology will be referred to as the GM Infringing Products.

## COUNT I
## DEFENDANTS INFRINGEMENT OF THE '555 PATENT

85.    Plaintiff BMI realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

86.    Defendants have committed, and continue to commit, acts of induced infringement of one or more claims of '555 Patent in violation of 35 U.S.C. § 271(b).  BMI is entitled to recover damages for such induced infringement by GM LLC for all infringing acts occurring prior to December 29, 2023, the execution date of the license agreement between BMI and Lippert/Curt.

87.    Defendants have had knowledge of the '555 Patent and knew, or were willfully blind to the fact, that their actions would induce infringement of one or more claims of the '555 Patent. Upon information and belief, GM LLC had knowledge of BMI's commercial products covered by the '555 Patent prior to November 2019.

88.    Rather than adopt BMI's patented solution, GM LLC affirmatively solicited Curt to independently develop tailgate sensor products for use with GM's MultiPro and Multi-Flex tailgates, with the express intent that Curt's products would be marketed and sold through GM's

IBP program. GM LLC's actions were taken with knowledge of BMI's patented products and with the specific intent to encourage the creation and sale of a competing system to be used in a manner that infringes the '555 Patent.

89.     GM LLC has actively induced infringement by promoting, offering for sale, selling, and offering installation of Curt's infringing tailgate sensor products—referred to herein as the Curt Infringing Products—that, when used in their normal and customary manner as intended and designed, directly infringe one or more claims of the '555 Patent. BMI is entitled to pursue damages from GM LLC for such acts of inducement that occurred prior to December 29, 2023.

90.     BMC actively induces infringement by promoting, offering to sell, selling, offering installation of, and physically installing the Curt Infringing Products . Upon information and belief, BMC is identified on the Accessories GMC Website and Accessories Chevrolet Website as the sole participating dealer for customers located in ZIP code 77619 in the Eastern District of Texas. These platforms allow customers to purchase infringing products with the option to have them shipped directly to BMC for installation. When used as intended and designed, these products directly infringe one or more claims of the '555 Patent. BMC's conduct in facilitating the sale and installation of such infringing products constitutes affirmative acts intended to cause and encourage direct infringement by third parties.

91.     GM LLC's and BMC's affirmative acts—including soliciting Curt's development of infringing products, promoting those products for use with GM's vehicles, offering them for sale through branded online platforms, and facilitating their sale and installation—constitute active inducement of infringement under 35 U.S.C. § 271(b). BMI may seek damages for all such acts of inducement occurring prior to December 29, 2023, the effective date of the license agreement granted to Lippert and Curt.

92.    As an exemplary claim, Claim 15 of the '555 Patent is reproduced below:

*15. A tailgate deactivation system comprising:*

*a switch comprising:*

> *two terminals configured to be electrically coupled to a tailgate power circuit that supplies power to at least a portion of a tailgate of a vehicle; and*

> *an actuator comprising an actuation surface, wherein the actuator is configured to electrically couple the two terminals in an on state to allow power to flow in the tailgate power circuit, and to electrically decouple the two terminals in an off state to inhibit power from flowing in the tailgate power circuit, and wherein the actuation surface is configured to transition the switch from the on state to the off state by coupling a ball mount system to a hitch receiver tube of the vehicle.*

93.    An exemplary claim chart detailing the correspondence of every element of representative claim 15 of the '555 Patent with features of the Curt Infringing Products is attached hereto as Exhibit A-1 and incorporated by reference as if fully set forth herein.

94.    Defendants knew of the '555 Patent, or should have known of the '555 Patent, but were willfully blind to its existence. Defendants have actual knowledge of the '555 Patent and its infringement at least through its relationship with Lippert, Curt, or the filing and service or notice of filing of this Complaint.

95.    Defendants' acts of induced infringement have been willful, deliberate, and in reckless disregard of Plaintiff's patent rights. As a result, Plaintiff is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284.

96.     BMI has suffered monetary damages by reason of Defendants' infringement of the '555 Patent.

## COUNT II
## DEFENDANTS INFRINGEMENT OF THE '148 PATENT

97.     Plaintiff BMI realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

98.     Defendants have directly infringed under 35 U.S.C. § 271(a) and continue to infringe, either literally and/or under the doctrine of equivalents, at least one or more claims of the '148 Patent under 35 U.S.C. § 271(a) by, without BMI's authority, manufacturing, causing to be manufactured, using, offering for sale, selling, offering for sale and/or providing and/or causing to be used in the United States at least the GM Infringing Products.

99.     As an exemplary claim, Claim 1 of the '148 Patent is reproduced below:

*1. A tailgate deactivation system comprising:*

*a switch configured to be electrically coupled to a tailgate power circuit that supplies power to at least a portion of a tailgate of a vehicle, wherein the switch comprises a proximity switch; and*

*an actuator configured to cause the switch to transition from an on state to an off state, in the on state the switch being configured to allow power to flow in the tailgate power circuit, and in the off state the switch being configured to inhibit power from flowing in the tailgate power circuit.*

100.    An exemplary claim chart detailing the correspondence of every element of representative claim 1 of the '148 Patent with features of the GM Infringing Products is attached hereto as Exhibit B-1 and incorporated by reference as if fully set forth herein.

101.    Upon information and belief, Defendants have provided instructions,

promotional materials, product integration, and/or installation services that guide customers to use the GM Infringing Products in a manner that infringes the '148 Patent, and these acts were committed with the intent to cause such infringement.

102.    Defendants have committed, and continue to commit, affirmative acts that induce infringement of one or more claims of the '148 Patent with knowledge of the '148 Patent and knowledge or willful blindness to the likelihood, that the induced acts constitute infringement of one or more claims of the '148 Patent. As an illustrative example, Defendants have provided, promoted, and offered systems and features within the GM Infringing Products which, when used in their normal and customary manner as intended and designed by GM LLC, directly infringe one or more claims of the '148 Patent. Defendants have further induced infringement by providing their customers with instructions or guidance on using the GM Infringing Products in infringing configurations

103.    Defendants have also committed, and continue to commit, contributory infringement of one or more claims of the '148 Patent under 35 U.S.C. § 271(c), by knowingly selling or offering to sell systems and features within the GM Infringing Products that constitute a material part of the invention, are not staple articles of commerce suitable for substantial non-infringing use, and are used in a manner that results in direct infringement by third parties.

104.    Defendants had actual knowledge of the '148 Patent and its infringement at least through their relationship with Lippert, Curt, or through the filing, service, or notice of this Complaint. Defendants knew of the '148 Patent, or should have known of it, but were willfully blind to its existence and the resulting infringement.

105.    Defendants' acts of infringement have been and continue to be willful. Defendants acted despite an objectively high likelihood that their actions constituted infringement

of a valid patent, and this risk was either known or so obvious that it should have been known. As a result, BMI is entitled to enhanced damages under 35 U.S.C. § 284.

106.    BMI has suffered monetary damages by reason of Defendants' infringement of the '148 Patent.

### COUNT III
### DEFENDANTS INFRINGEMENT OF THE '533 PATENT

107.    Plaintiff BMI realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

108.    Defendants have directly infringed under 35 U.S.C. § 271(a) and continue to infringe, either literally and/or under the doctrine of equivalents, at least one or more claims of the '533 Patent under 35 U.S.C. § 271(a) by, without BMI's authority, manufacturing, causing to be manufactured, using, offering for sale, selling, offering for sale and/or providing and/or causing to be used in the United States at least the GM Infringing Products.

109.    As an exemplary claim, Claim 5 of the '533 Patent is reproduced below:

*5. A vehicle, comprising:*

*a hitch receiver apparatus;*

*a vehicle bed;*

*a multi-functional tailgate having a primary gate panel with an inner gate panel, with the inner gate panel being rotatable about a first horizontal axis extending through the primary gate panel a certain distance above a second horizontal axis about which the primary gate panel is rotatable, with the primary gate panel being configured to pivot between an upward vertical position and a horizontal position relative to the vehicle bed and with the inner gate panel being configured to independently pivot relative to the primary gate*

35

*panel, with the inner gate panel being further configured to be pivoted to a downward vertical position while the primary gate panel is in the horizontal position relative to the vehicle bed such that a portion of the inner gate panel is proximate the hitch receiver apparatus;*

*a circuitry operable to enable or disable power delivery associated with the inner gate panel; and*

*wherein the vehicle is operable to control the circuitry to configure the multi-functional tailgate in one of a set of multi-functional tailgate configurations, including:*

> *a first configuration with the primary gate panel in the horizontal position and enabled to be pivoted and the inner gate panel inhibited from being downwards pivoted;*

> *a second configuration with the primary gate panel in the horizontal position and enabled to be pivoted and the inner gate panel enabled to be downwards pivoted;*

> *a third configuration with the primary gate panel in the upward vertical position and enabled to be pivoted and the inner gate panel inhibited from being downwards pivoted; and*

> *a fourth configuration with the primary gate panel in the upward vertical position and enabled to be pivoted and the inner gate panel enabled to be downwards pivoted.*

110.    An exemplary claim chart detailing the correspondence of every element of representative claim 5 of the '533 Patent with features of the GM Infringing Products is attached

hereto as Exhibit C-1 and incorporated by reference as if fully set forth herein.

111.    Upon information and belief, Defendants have provided instructions, promotional materials, product integration, and/or installation services that guide customers to use the GM Infringing Products in a manner that infringes the '533 Patent, and these acts were committed with the intent to cause such infringement.

112.    Defendants have committed, and continue to commit, affirmative acts that induce infringement of one or more claims of the '533 Patent with knowledge of the '533 Patent and knowledge or willful blindness to the likelihood that the induced acts constitute infringement of one or more claims of the '533 Patent. As an illustrative example, Defendants have provided, promoted, and offered systems and features within the GM Infringing Products which, when used in their normal and customary manner as intended and designed by GM LLC, directly infringe one or more claims of the '533 Patent. Defendants have further induced infringement by providing their customers with instructions or guidance on using the GM Infringing Products in infringing configurations.

113.    Defendants have also committed, and continue to commit, contributory infringement of one or more claims of the '533 Patent by a third party under 35 U.S.C. § 271(c), by knowingly selling or offering to sell systems and features within the GM Infringing Products that constitute a material part of the invention, are not staple articles of commerce suitable for substantial non-infringing use, and are used in a manner that results in direct infringement by third parties.

114.    Defendants had actual knowledge of the '533 Patent and its infringement at least through their relationship with Lippert, Curt, or through the filing, service, or notice of this Complaint. Defendants knew of the '533 Patent, or should have known of it, but were willfully

blind to its existence and the resulting infringement.

115.    Defendants' acts of infringement have been and continue to be willful. Defendants acted despite an objectively high likelihood that their actions constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known. As a result, BMI is entitled to enhanced damages under 35 U.S.C. § 284.

116.    BMI has suffered monetary damages by reason of Defendants' infringement of the '533 Patent.

## DEMAND FOR JURY TRIAL

117.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, BMI hereby demands a jury trial for all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Banks Morrison Innovations, LLC prays for relief against Defendants, General Motors LLC and Beaumont Motor Company, jointly and severally, as follows:

a. Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Asserted Patents;

b. Entry of judgment declaring that Defendants' infringement of the Asserted Patents has been willful and deliberate;

c. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the Asserted Patents;

d. An order awarding damages sufficient to compensate BMI for Defendants' infringement of the Asserted Patents, but in no event less than a reasonable royalty, together with interest and costs;

e. An order awarding BMI treble damages under 35 U.S.C. § 284 as a result of Defendants' willful and deliberate infringement of the Asserted Patents;

f. Entry of judgment declaring that this case is exceptional and awarding BMI its costs and reasonable attorney fees under 35 U.S.C. § 285; and

g. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  April 18, 2025

By: */s/ Edward M. Roney, IV by permission Claire Henry*
Edward M. Roney, IV (*pro hac vice forthcoming*)
North Carolina State Bar No. 53233
Joseph A. Dickinson (*pro hac vice forthcoming*)
North Carolina State Bar No. 57024
**KAUFMAN & CANOLES, P.C.**
4350 Lassiter at North Hills Avenue, Suite 350
Raleigh, NC 27609
T:  (984) 222-8100
F:  (888) 360-9092
emroney@kaufcan.com
jadickinson@kaufcan.com

Stephen E. Noona (*pro hac vice forthcoming*)
Virginia State Bar No. 25367
Brandan M. Goodwin (*pro hac vice forthcoming*)
Virginia State Bar No. 94766
Benjamin A. Korte (*pro hac vice forthcoming*)
Virginia State Bar No. 95855
Ahmed E. Mohamed Khalil (*pro hac vice forthcoming*)
Virginia State Bar No. 98315
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
T:  (757) 624-3000
F:  (888) 360-9092
senoona@kaufcan.com
bmgoodwin@kaufcan.com
amkhalil@kaufcan.com
bakorte@kaufcan.com

Claire Abernathy Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
T:  (903) 757-6400 (phone)
F:  (903) 757-2323 (facsimile)
claire@millerfairhenry.com

*Counsel for Plaintiff Banks Morrison Innovations, LLC*